UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ZILINSKAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE COUNTY OF MONTEREY, et al., <br><br> Defendants. | Case No. 25-cv-07506-PCP <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** <br><br> Re: Dkt. Nos. 19, 21 |

Plaintiffs Richard and Mildred Zilinskas bring this suit against the City of Monterey, the County of Monterey, and various officers, officials, and Roe defendants in connection with an arrest warrant issued for Richard. The city and county defendants move to dismiss each of plaintiffs' federal and state law claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court grants in part and denies in part the motions to dismiss.

**BACKGROUND**

Richard Zilinskas is a 75-year-old retired schoolteacher and Canadian resident.[1] In October 2024, Richard entered the United States when vacationing with his wife Mildred at Niagara Falls. Upon crossing the border, Richard was arrested as a fugitive from justice based on an outstanding arrest warrant issued by Monterey County Superior Court. He was held in county jail for 13 days.

The arrest warrant arose from an investigation by the Monterey Police Department into sexually explicit communications between Jane Doe, a minor, and an adult male, "David," on the website meetyou.me. David purported to be 48 years old and to live in Ohio. From the audio of a

---

[1] The Court assumes the truth of the allegations in the complaint for the purposes of defendants' Rule 12(b)(6) motions.

phone call between Doe and David, officers observed that "David's voice was apparently that of an adult male." Officers did not report "the reduced volume, hoarseness, or shakiness that is present in the voice of Richard Zilinskas."

As part of the investigation, Monterey Police Department Detective Michael Garcia requested and received from meetyou.me the email address and IP addresses associated with David's account. David's activity on meetyou.me, located using IP addresses, originated in various Michigan cities. David's email address was associated with the name "Chuck Farlee" and a phone number. Garcia contacted Canadian authorities and learned that the phone number belonged to Mildred, but that Richard was named on the account. The Canadian authorities also provided a photo of Richard. Garcia contacted the U.S. Department of Homeland Security, which confirmed that Richard had not been in Michigan during the relevant period.

Based on Garcia's investigation, Monterey County Deputy District Attorney Billie Gibson, on behalf of District Attorney Jeannine M. Pacioni, filed a state court criminal complaint accusing Richard of four felony counts. Gibson also filed an application for an arrest warrant for Richard. Gibson allegedly relied on an investigation report prepared by Garcia and filed a sworn declaration that she had personal knowledge that Richard had committed the alleged crimes. Based on Gibson's declaration and the criminal complaint, the Superior Court of California for the County of Monterey issued the warrant for Richard's arrest. Richard was never informed of the warrant or charges prior to his arrest. When Richard was arrested, he was told that he had missed a state court date and was being detained as a fugitive from justice. A few months after Richard's arrest and detention in Niagara, the charges against him were dismissed. The state court later issued a formal finding that Richard was factually innocent of all charges.

Richard and Mildred filed suit alleging nine federal and state law claims against the city defendants (the City of Monterey and Garcia) and the county defendants (the County of Monterey, Gibson, and Pacioni) for: (1) reckless criminal investigation; (2) malicious prosecution; (3) false arrest; (4) negligent supervision; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) deliberate fabrication of evidence; (8) deliberate suppression of evidence; and (9) judicial deception. The city and county defendants each move to dismiss

plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**ANALYSIS**

**I.     Federal Law Claims**

Each of plaintiffs' federal claims is alleged under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.     Judicial Deception**

A judicial deception claim "rests on the assertion that [an] affidavit misled the court into

3

United States District Court
Northern District of California

issuing a [] warrant." *Gressett v. Contra Costa Cnty.*, No. 12-cv-3798 EMC, 2013 WL 2156278, at *7 (N.D. Cal. May 17, 2013). Plaintiffs allege that Richard was arrested unlawfully in violation of his Fourth Amendment right to be free from unreasonable seizures because Garcia, Gibson, and Pacioni misrepresented and omitted material information in securing the arrest warrant. To state a judicial deception claim premised on this arrest, plaintiffs "must establish both [1] a substantial showing of the deliberate falsity or reckless disregard of the truth of the statements in the affidavit and [2] the materiality of those statements to the ultimate determination of probable cause." *Id.* (quoting *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)); *see Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). "The materiality determination is a question for the court and 'requires the plaintiff to demonstrate that the magistrate would not have issued the warrant with false information redacted, or omitted information restored.'" *Gressett*, 2013 WL 2156278, at *7 (quoting *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011)).

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008); *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) ("Probable cause exists when there is a fair probability or substantial chance of criminal activity."). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994).

The city defendants argue that plaintiffs' judicial deception claim fails to allege sufficient facts to establish that Garcia misrepresented or omitted material information. Plaintiffs allege that Garcia withheld information material to the finding of probable cause in his investigation report, which he provided to Gibson and knew would be presented to the state court. Garcia allegedly omitted that Richard was not the primary holder of the phone number associated with David's email address, was not named on David's email address, did not match the description of David's age and voice, and was not located in Michigan, where David's IP addresses originated. The only information Garcia allegedly reported that supported a finding of probable cause was that David

United States District Court
Northern District of California

used Mildred's phone number to register for his email account. Plaintiffs allege, however, that the email platform "allowed users to open accounts as long as the appropriate number of digits for a phone number was entered" and did not employ an "authentication or verification mechanism," effectively allowing David to enter a phone number "at random." Balancing the limited value of this incriminating information and the weight of the potentially exculpatory evidence omitted by Garcia, it is plausible that the state court would not have issued a warrant for Richard if presented with the totality of the evidence. The allegedly omitted information was thus material to the finding of probable cause. Accordingly, Plaintiffs plausibly allege a claim of judicial deception against Garcia.

In support of their claim against Gibson, plaintiffs allege that Gibson submitted "a warrant affidavit that contained one or more knowing misrepresentations or omissions material to the finding of probable cause." But they also allege that "Gibson relied upon and referenced the report of Detective Garcia in the affidavit," which itself allegedly omitted material information. Given that Gibson allegedly relied on Garcia's report rather than her own knowledge, plaintiffs do not adequately allege that Gibson acted with "deliberate falsity or reckless disregard of the truth of the statements in the affidavit," and thus do not state a claim against Gibson for judicial deception. They likewise fail to state a claim against Pacioni for judicial deception because they do not allege that Pacioni misrepresented or omitted material facts to secure the arrest warrant.

Accordingly, the city defendants' motion to dismiss the judicial deception claim against Garcia is denied, while the county defendants' motion to dismiss the judicial deception claim against Gibson and Pacioni is granted.

### B.     Malicious Prosecution

Plaintiffs allege that Richard was unreasonably seized in violation of the Fourth Amendment because Garcia, Gibson, and Pacioni initiated a prosecution of him without probable cause and for an improper purpose. To state a claim for malicious prosecution under § 1983, a plaintiff must show he was unreasonably seized as part of a prior action that "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice" for the purpose

of denying his constitutional rights. *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citations omitted); *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024).[2]

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted). "[T]he presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* at 1067; *see also Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 945 (N.D. Cal. 2014) ("[T]he presumption of prosecutorial independent judgment is an evidentiary presumption that is applicable at the summary judgment stage to direct the order of proof; 'it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place.'"). Moreover, where a judge or magistrate has approved an arrest warrant, a plaintiff can rebut this *prima facie* finding of probable cause "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy*, 368 F.3d at 1067.

The city defendants argue only that plaintiffs' allegations are conclusory and that Garcia's investigation was "professional" even if it "yield[ed] incorrect facts" because David used Mildred's phone number to register for an email account. As discussed above, however, plaintiffs plausibly allege that Garcia withheld evidence in his investigation report that was material to the finding of probable cause. Accordingly, the city defendants' arguments fail.

The county defendants argue that Gibson and Pacioni are entitled to absolute prosecutorial immunity on plaintiffs' malicious prosecution claim.

---

[2] The city defendants argue that each of plaintiffs' federal claims are essentially one claim for judicial deception. As demonstrated herein, however, the elements of each of their federal claims are distinct, albeit similar. The Court will therefore consider each separately.

> A prosecutor is entitled to absolute immunity from a civil action for damages when he or she performs a function that is "intimately associated with the judicial phase of the criminal process." [] A prosecutor's functions that are protected by absolute immunity include initiating a prosecution and presenting the State's case, …, appearing at a probable cause hearing to support an application for a search warrant, …, and preparing and filing an arrest warrant. [] However, the functions of an advocate do not include advising police officers whether probable cause exists during their pretrial investigation, …, fabricating evidence before probable cause has been established, …, or attesting to the facts that support an arrest warrant.

*Ewing v. City of Stockton*, 588 F.3d 1218, 1232–33 (9th Cir. 2009) (internal citations omitted).

Plaintiffs allege that Gibson applied for an arrest warrant for Richard by providing a declaration, sworn under penalty of perjury, that Richard committed the crimes of which he was accused even though she "had no factual basis to support her purported personal knowledge." In doing so, Gibson acted in the capacity of a witness rather than a prosecutor by testifying to the facts supporting an application for an arrest warrant. *See Kalina v. Fletcher*, 522 U.S. 118, 130–31 (1997). She is therefore not entitled to absolute immunity. *See id.* In contrast, plaintiffs do not raise comparable allegations as to Pacioni. They also do not dispute in their brief opposing the county defendants' motion to dismiss that Pacioni is entitled to absolute immunity. They have thus conceded the argument. *See Barker v. McFerran*, No. 23-cv-00308-DMR, 2024 WL 2031640, at *5 (N.D. Cal. May 6, 2024).

The county defendants also argue that plaintiffs fail to plead that Gibson prosecuted Richard "with malice and without probable cause, and for the purpose of denying plaintiff of his constitutional right." The Court addressed the element of probable cause above. And malice, at the pleading stage, "may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs contend that they adequately allege that Gibson acted with disregard for evidence indicating Richard's innocence and for the purpose "of inflating the statistics and reputations" of defendants or "out of bias against foreign nationals." At the pleading stage, these allegations are sufficient to plausibly allege that Gibson acted with the purpose of denying Richard's constitutional rights. *See Awabdy*, 368 F.3d at 1069–70 (explaining that acting to deprive the plaintiff of his rights under the First, Fourth,

7

Thirteenth, or Fourteenth Amendment is sufficient to support a malicious prosecution claim under § 1983).

Accordingly, the Court denies the motions to dismiss the malicious prosecution claim against Garcia and Gibson. The Court grants the county defendants' motion to dismiss the claim against Pacioni because she is entitled to absolute prosecutorial immunity.

### C.    Deliberate Fabrication of Evidence

Plaintiffs allege that Garcia violated Richard's rights under the Fourteenth Amendment by including false evidence in the investigation report that was used to charge Richard.[3] "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Plaintiffs do not identify any false evidence that Garcia allegedly presented in his report. Their generalized allegations are conclusory and insufficient to plead a claim for deliberate fabrication of evidence. The city defendants' motion to dismiss this claim is therefore granted.

### D.    Deliberate Suppression of Evidence

Plaintiffs allege that Garcia, Gibson, and Pacioni deliberately withheld evidence favorable to Richard in violation of his Fourteenth Amendment rights. No party identifies the elements of such a claim for deliberate suppression of evidence. Indeed, the claim appears to be duplicative of plaintiffs' other claims.

Plaintiffs do not allege the components of a *Brady* claim. *See Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the suppression of evidence favorable to the defendant and known to the prosecution, but not disclosed to the defendant, violates a defendant's Fourteenth Amendment due process rights. *Id.*; *United States v. Cloud*, 102 F.4th 968, 975–76 (9th Cir. 2024). Here, plaintiffs allege that the defendants withheld evidence from one another and from the state court in connection with the initiation of a criminal complaint, not that the defendants withheld evidence

---

[3] Plaintiffs' opposition brief indicates that they intended to allege this claim against Gibson and Pacioni in addition to Garcia. Any such claim would fail for the reasons discussed above with respect to Garcia.

8

from Richard in connection with a criminal trial.

Further, the deliberate suppression of evidence claim relies on the same theory as plaintiffs' other federal claims—namely, that Garcia withheld material evidence from Gibson and the state court. Reframing this theory under the guise of the Fourteenth Amendment does not provide plaintiffs with a new cause of action; it is the Fourth Amendment that "addresses 'pretrial deprivations of liberty,'" not the "more generalized notion of 'substantive due process.'" *Galbraith*, 307 F.3d at 1127.

Accordingly, the motions to dismiss the deliberate suppression of evidence claim are granted.

### E.    Reckless Criminal Investigation

Plaintiffs allege that Garcia, Gibson, and Pacioni's reckless investigation resulted in the filing of charges against Richard without probable cause, denying him a fair criminal proceeding in violation of his substantive due process rights under the Fourteenth Amendment. The Ninth Circuit has not recognized a § 1983 claim for reckless criminal investigation. Under the Eighth Circuit caselaw relied on by plaintiffs, however, state officers' actions violate an individual's liberty interest in obtaining fair criminal proceedings when "those actions shock the conscience." *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (citations omitted). "Mere negligent failure to investigate" is not enough; the plaintiff must show that officers "intentionally or recklessly failed to investigate." *Id.* at 833–34.

In *Tennison v. City & County of San Francisco*, the Ninth Circuit discussed *Armine* in the context of a *Brady* claim that alleged police officers failed to disclose exculpatory material to prosecutors. 570 F.3d 1078, 1088–89 (9th Cir. 2009). The court did not, however, outright adopt *Armine*'s recognition of a reckless investigation claim. Various district courts in the Ninth Circuit have nonetheless recognized such a claim. *See Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1215 (D. Or. 2024) (collecting cases); *Figueroa v. Kern Cnty.*, No. 19-cv-00558-DAD-JLT, 2021 WL 826216, at *6–7 (E.D. Cal. Mar. 4, 2021).

The Court need not decide whether to recognize a reckless investigation claim because plaintiffs fail to plead such a claim. The reckless investigation claim recognized in *Armine* and a

United States District Court
Northern District of California

United States District Court
Northern District of California

handful of courts in this circuit protects a liberty interest "in obtaining fair criminal proceedings." *See* 522 F.3d at 833. Each of these cases involved plaintiffs who had been arraigned and at times tried, convicted, and imprisoned. *See id.* at 829; *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 949, 956–57 (8th Cir. 2001); *Samuelson*, 725 F. Supp. 3d at 1210; *Figuero*, 2021 WL 826216, at *1. In *Galbraith*, the Ninth Circuit concluded that a § 1983 claim against a coroner for a deficient autopsy and reckless or intentional falsification of an autopsy report was governed by Fourth Amendment principles for pretrial deprivations of liberty. 307 F.3d at 1126–27. The court affirmed the dismissal of the plaintiff's due process claims. *Id.* at 1127. Here, plaintiffs allege injuries from the institution of criminal proceedings against Richard, but do not allege that defendants' reckless investigation impaired Richard's rights in any resulting criminal proceedings. Therefore, following *Galbraith*, it is the Fourth Amendment's protections that govern plaintiffs' § 1983 claims, not the Fourteenth Amendment right to obtain a fair criminal proceeding that provides the basis for the reckless investigation claim considered in the cases plaintiffs cite. *See id.*

The motions to dismiss plaintiffs' reckless criminal investigation claim are therefore granted.[4]

### F.     *Monell* Claim

None of plaintiffs' federal claims are pleaded against the city or the county. Nevertheless, plaintiffs argue in opposition to the city defendants' motion that, while not brought as a discrete claim, certain allegations plausibly allege *Monell* liability for failure to supervise. Each of the allegations that plaintiffs cite, however, contend only that defendant Roes 1–10 were supervisors at the Monterey Police Department with duties to supervise Garcia. It is not evident from these allegations and plaintiffs' claims that they are alleging a *Monell* theory of liability against either the city or the county. Because plaintiffs' *Monell* theory is effectively raised for the first time in opposition, the city defendants' motion to dismiss any *Monell* claims is granted.

---

[4] The complaint also brings the reckless investigation claim pursuant to California Government Code 815.2. But plaintiffs do not otherwise allege or argue that they state a claim on this basis under state law.

United States District Court
Northern District of California

### G.    Mildred's Familial Association Claims

Although Mildred joins Richard in bringing each of the federal claims, the complaint also alleges that defendants violated Mildred's "cognizable interest under the Due Process Clause of the 14th Amendment … to be free from unwarranted state interference in her familial relationship with Richard." The parties dispute whether Mildred has standing to assert a claim for loss of familial association based on caselaw from the Ninth Circuit dodging the question. *See Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) ("We have not previously held whether a substantive due process right exists in that context …. We need not consider those issues …."). Like the Ninth Circuit in *Peck*, the Court need not resolve the question at this stage because "even under [] case law relating to familial-association claims," plaintiffs do not adequately plead a loss of familial association. *See id.*

The Fourteenth Amendment protects relationships between "individuals [that] are deeply attached and committed to each other," "that attend the creation and sustenance of a family," and that are "highly personal." *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1193 (9th Cir. 1988) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–19 (1984)). "Few close relationships—even between blood relatives—can serve as a basis for asserting Fourteenth Amendment loss of companionship claims." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018). The title of a familial relationship, alone, is insufficient to guarantee constitutional protection. *See id.* Rather, the "factors relevant in determining whether a particular association can claim the protection of the due process clause are the group's size, its congeniality, its duration, the purposes for which it was formed, and the selectivity in choosing participants." *IDK*, 836 F.2d at 1193.

Here, plaintiffs allege that Mildred is Richard's "lawfully married wife" and was harmed by Richard's arrest through the "loss of quality of familial relationships" and "unwarranted interference with her familial relationships." These conclusory allegations are insufficient on their own to plead that defendants' conduct substantially interfered with the kinds of "deep attachments and commitments" accompanying marriage that are protected by the Fourteenth Amendment. *See Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044 (N.D. Cal. 2022); *Garcia v. Cnty. of Napa*, No. 21-cv-03519-HSG, 2022 WL 110650, at *2–3 (N.D. Cal. Jan. 12, 2022), *aff'd sub nom.*

11

*Garcia through AG v. Cnty. of Napa*, No. 23-15056, 2024 WL 1734125 (9th Cir. Apr. 23, 2024).[5] The city defendants' motion to dismiss Mildred's claims is therefore granted.[6]

## II.    State Law Claims

### A.    Statutory Immunity

The city and county defendants argue that they are statutorily immune from plaintiffs' state law claims for false arrest, negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress.

According to defendants, Garcia, Gibson, and Pacioni are immune under California Government Code § 821.6, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Plaintiffs argue that § 821.6 immunity only applies to state law claims for malicious prosecution. But the California Supreme Court in *Leon v. County of Riverside* held that the scope of § 821.6 is not limited by a claim's label:

> [A]lthough our prior decisions have loosely described section 821.6 as conferring immunity against malicious prosecution claims (e.g., *Sullivan, supra*, 12 Cal.3d at p. 721, 117 Cal.Rptr. 241, 527 P.2d 865), section 821.6 is more aptly characterized as providing immunity against liability for claims of injury based on tortious or wrongful prosecution. The immunity is narrow in the sense that it applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or prosecution of an official proceeding. But this immunity is broad in the sense that it applies to every such tort claim, whether formally labeled as a claim for malicious prosecution or not. And where it applies, it is absolute, meaning that "the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement."

---

[5] If the Fourteenth Amendment prohibited *any* interference with the relationship between a husband and a wife, as plaintiffs seem to presume, every unjustified traffic stop of a spouse returning home from work or an errand, no matter how short, would give rise to a constitutional claim by delaying the spouses' reunion. No caselaw suggests that the Fourteenth Amendment stretches this far.

[6] The city defendants' request for judicial notice of the appeal from a case in the Eastern District of California, *N.M. by & through Miller v. Placer Cnty.*, No. 25-cv-1389 WBS JDP, 2025 WL 2443702 (E.D. Cal. Aug. 25, 2025), is granted.

United States District Court
Northern District of California

United States District Court
Northern District of California

14 Cal. 5th 910, 922 (2023) (citation omitted). *Leon* makes clear that both the nature of an official's conduct and the resulting harm are relevant in determining whether § 821.6 applies.

The parties focus their arguments on plaintiffs' false arrest claim.[7] Although plaintiffs argue that they do not allege "any state law claims for injury arising out of the institution of a judicial proceeding" and instead "seek recovery for injury to the right to be free from restraint of movement caused by the arrest itself," a plain reading of the complaint indicates otherwise. Richard's arrest flowed entirely from the initiation of a criminal proceeding against him. Gibson and Pacioni allegedly filed an application for a criminal complaint and search warrant in state court. Richard was eventually arrested as a "fugitive from justice" for missing a court appearance in the resulting criminal proceeding. The harm of his arrest thus does not exist independently of the "institution … of an official proceeding" against him. *See id.* at 921–22. Plaintiffs' argument that an injury cannot originate from the judicial process until a criminal defendant is arraigned is unsupported. In *Leon*, the California Supreme Court explained that to "institute" a proceeding means to "originate," "get established," or "initiate." *Id.* at 920. Nothing in this language suggests that an arraignment is required before a harm may be caused by the institution of a criminal proceeding for the purposes of immunity.

Gibson, Pacioni, and Garcia's alleged conduct was also of the type protected by § 821.6. Plaintiffs' false arrest claim against Gibson and Pacioni is premised on their "role[s] in bringing the proceedings about." *See id.* at 921. Plaintiffs do not argue otherwise.

The nature of Garcia's conduct is more complicated. *Leon* expressly distinguished between "the conduct of an investigation and the initiation or conduct of prosecution." *Id.* at 923. Although such conduct "may sometimes overlap," the court held that investigatory conduct, without more, does not merit immunity under § 821.6. This may be the unique case, however, in which the conduct does overlap. Under *Leon*, "[i]f a law enforcement officer has initiated an official proceeding, the officer will enjoy immunity for that conduct under section 821.6, regardless of

---

[7] The county defendants concede that traditional false arrest claims are not entitled to § 821.6 immunity under *Leon* but argue that plaintiffs fail to state a false arrest claim here.

13

whether the officer's conduct may include certain acts described as investigatory." Here, plaintiffs allege that Garcia not only engaged in investigatory conduct but also participated in bringing about the criminal proceedings. And as noted above, the harm to plaintiffs here flowed entirely from the initiation of those proceedings, rather than from any independent aspect of Garcia's investigation. *See id.* at 921. Accordingly, Garcia, Gibson, and Pacioni are immune from plaintiffs' claim for false arrest.

As to plaintiffs' remaining state law claims, plaintiffs' arguments against finding the individual defendants immune under § 821.6 are premised on the same contention that immunity applies only to malicious prosecution claims and to injuries arising from the institution of judicial proceedings. Much like plaintiffs' false arrest claim, the harms alleged by plaintiffs' other state law claims stem from Garcia, Gibson, and Pacioni's alleged conduct in instituting criminal proceedings against Richard. By way of example, plaintiffs' negligent supervision claim alleges that the supervisory defendants knew or should have known that Gibson and Garcia were unfit when Gibson "advanced and perpetuated the prosecution of Richard" and Garcia "instituted, advanced, and perpetuated the investigation and prosecution of Richard." Therefore, Garcia, Gibson, and Pacioni are also immune under § 821.6 from plaintiffs' claims for negligent supervision and negligent and intentional infliction of emotional distress.

The city and county are immune from plaintiffs' state law claims under California Government Code § 815.2. Section 815.2 provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Because Garcia, Gibson, and Pacioni are immune from plaintiffs' state law claims, the city and county cannot be held vicariously liable for their alleged conduct.

The city and county's motions to dismiss the false arrest, negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress claims are therefore granted.

**CONCLUSION**

For the foregoing reasons, the city defendants' and county defendants' motions to dismiss are granted in part and denied in part. The motions are denied as to plaintiffs' § 1983 claims for

14

judicial deception against Garcia and for malicious prosecution against Garcia and Gibson. Plaintiffs' remaining federal claims are dismissed with leave to amend. Plaintiffs' state law claims are dismissed without leave to amend because the defendants are statutorily immune from those claims.

Any amended complaint must be filed by March 10, 2026. If plaintiffs fail to file an amended complaint, the claims dismissed in this order will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 10, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

15