United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD ZILINSKAS, et al.,
Plaintiffs,

v.

THE COUNTY OF MONTEREY, et al.,
Defendants.

Case No. 5:25-cv-07506-PCP

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND MOTION TO STRIKE**

Re: Dkt. Nos. 42, 43

This suit arises from the wrongful arrest of Richard Zilinskas. He and his wife, Mildred Zilinskas, assert claims against the County of Monterey, the City of Monterey, detective Michael Garcia, and deputy district attorney Billie Gibson for (1) malicious prosecution (against Garcia and Gibson); (2) judicial deception (against Garcia); (3) violation of Tom Bane Civil Rights Act (against all defendants); and (4) loss of consortium (against all defendants). Defendants now move to dismiss the first, third, and fourth claims against them under Federal Rule of Civil Procedure 12(b)(6). The city defendants also move to strike and dismiss the third and fourth claims under California's anti-SLAPP statute. For the following reasons, the Court grants in part and denies in part the motions.

**BACKGROUND**

Richard Zilinskas is a 75-year-old retired schoolteacher and Canadian resident.[1] In October 2024, he entered the United States when vacationing with his wife Mildred at Niagara Falls. Upon crossing the border, Richard was arrested as a fugitive from justice based on an outstanding arrest

---

[1] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiffs' complaint.

warrant issued by Monterey County Superior Court. He was held in county jail for 13 days.

The arrest warrant arose from an investigation by the Monterey Police Department into sexually explicit communications between Jane Doe, a minor, and "David," an adult male, on the website meetyou.me. David purported to be 48 years old and to live in Ohio. From the audio of a phone call between Doe and David, an officer observed that "David's voice was apparently that of an adult male." The officer did not report the reduced volume, hoarseness, or shakiness that distinguish the voice of Richard Zilinskas.

As part of the investigation, Monterey Police Department Detective Michael Garcia requested and received from meetyou.me the email address and IP addresses associated with David's account. David's activity on the website, located using IP addresses, originated in various Michigan cities. David's email address was associated with the name "Chuck Farlee" and a phone number. Garcia contacted Canadian authorities and learned that the phone number belonged to Mildred and that Richard was named on the account. The Canadian authorities also provided a photo of Richard. Garcia contacted the U.S. Department of Homeland Security, which informed him that Richard had not been in Michigan during the relevant period.

Based on Garcia's investigation, Monterey County Deputy District Attorney Billie Gibson filed a state court criminal complaint accusing Richard of four felony counts. Gibson also filed an application for an arrest warrant for Richard. Gibson allegedly relied on an investigation report prepared by Garcia and filed a sworn declaration that she had personal knowledge that Richard had committed the alleged crimes. Based on Gibson's declaration and the criminal complaint, the Superior Court of California for the County of Monterey issued the warrant for Richard's arrest. Richard was never informed of the warrant or charges prior to his arrest. When Richard was arrested, he was told that he had missed a state court date and was being detained as a fugitive from justice. A few months after Richard's arrest and detention in Niagara, the charges against him were dismissed. The state court later issued a formal finding that Richard was innocent of all charges and exonerated him.

News of the incident quickly circulated in his hometown community. Parents, students, and other teachers circulated his mug shot and reasons for arrest. Despite his innocence, Richard

was forced to resign from his position as a teacher. Since then, he has become reclusive and depressed. Mildred was also ostracized and isolated by her community. Together, the Zilinskas's seek relief in the form of damages and attorney's fees.

This is the first amended complaint by the couple. Their original complaint was dismissed in part, but to the Court denied the motion to dismiss their § 1983 claims for judicial deception against Garcia and for malicious prosecution against Garcia and Gibson. *Zilinskas v. Cnty. of Monterey*, 819 F. Supp. 3d 1026, 1041 (N.D. Cal. 2026) ("*Zilinskas I*").

**LEGAL STANDARD**

The Federal Rules require a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint does not do so, the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

The purpose of California's anti-SLAPP lawsuit is to prevent the filing of actions that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their

political or legal rights or to punish them for doing so." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013) (citation omitted). The statute should "be construed broadly." Cal. Civ. Proc. Code § 425.16.

To prevail on an anti-SLAPP motion, a movant must first "make a prima facie showing" that the suit arises from an act made by the movant in furtherance of their right to petition or speak. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d at 1272. If the movant meets that step, the burden then shifts to the plaintiff to establish that there is a reasonable probability that they will prevail on their claim. *Id.* A court may consider the pleadings and supporting affidavits when determining whether there is a probability that the plaintiff will prevail on the claim. Cal. Civ. Proc. Code § 425.16.

The Ninth Circuit reviews anti-SLAPP motions to strike under different standards depending on the motion's basis. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). If the motion is based on a legal insufficiency in the pleadings, then the motion is treated in the same manner as a motion to dismiss under Rule 12(b)(6). *Id.* at 834. If the motion challenges the factual sufficiency of a claim, then it is treated under the same standard as a Rule 56 motion. *Id.* Therefore, courts in this district interpret *Planned Parenthood* to create another step in the California anti-SLAPP inquiry: Before applying step two, courts must determine whether the defendant's challenges are legal or factual. *See, e.g.*, *Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199, at *8 (N.D. Cal. Jan. 6, 2020); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 961 (N.D. Cal. 2020); *ITN Flix, LLC v. Hinojosa*, No. 214CV08797ODWAGRX, 2019 WL 3562669, at *5 (C.D. Cal. Aug. 6, 2019). Defendants aver that their motion is a legal challenge. Therefore, the Court will apply the Rule 12(b)(6) standard at step two.

## ANALYSIS

### I. County Defendants

The County defendants (Monterey County and deputy district attorney Billie Gibson) move to dismiss plaintiffs' third and fourth causes of action against them under Federal Rule 12(b)(6), contending that they are immune from those state law causes of action.

Public employees who prosecute any judicial proceeding within the scope of their employment are immune from suit, even if they act maliciously or without probable cause. Cal. Gov't Code § 821.6. Except as otherwise provided by statute, a public entity is not liable for the acts of an employee if that employee is immune from suit. Cal. Gov't Code § 815.2. The Bane Act explicitly bypasses the immunity in § 821.6 for "any peace officer or custodial officer" or any public entity that employs them. Cal. Civ. Code § 52.1. The statutory definition of a peace officer does not include a district attorney. *See* Cal. Penal Code § 830.

Plaintiffs contend that § 821.6 does not apply to their claims because they arise not from the prosecution of a judicial proceeding but from Richard's false arrest. *See Sullivan v. Cnty. of Los Angeles*, 527 P.2d 865, 870 (Cal. 1974); *see also Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016). As the Court previously explained, however, "Richard's arrest flowed entirely from the initiation of a criminal proceeding against him." *Zilinskas v. Cnty. of Monterey*, 819 F. Supp. 3d 1026, 1040 (N.D. Cal. 2026). As a result, Gibson is entitled to § 821.6 immunity, and the County is entitled to § 815.2 immunity. The Court therefore grants the County Defendants' motion to dismiss.

## II. City Defendants

City and Garcia move to strike and dismiss Plaintiffs' third and fourth causes of action pursuant to California Code of Civil Procedure § 425.16 and Federal Rule of Civil Procedure 12(b)(6). They also move to strike and dismiss Mildred Zilinskas' Fourteenth Amendment familial association claim. The Court grants the motions only as to the state law loss of consortium claim.

### A. Bane Act

There are two elements to a Bane Act claim. First, there must be a "threat, intimidation, or coercion," although that element need not be "transactionally independent" from the underlying constitutional violation alleged. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Second, there must be a specific intent to commit the predicate violation, although "a reckless disregard for a person's constitutional rights" may satisfy that requirement. *Id.* at 1045 (citation omitted). Defendants argue both that plaintiffs fail to show intent and coercion and that they are immune under Cal. Gov't Code § 820.2.

The Court has already found that plaintiffs sufficiently allege that Garcia committed at least one constitutional violation when he caused Richard to be unreasonably seized through judicial deception. *Zilinskas I*, 819 F. Supp. 3d at 1034. The judicial deception claim is therefore sufficient to plead the threats, intimidation, or coercion as required by the Bane Act, given that Richard's arrest undoubtedly involved coercion.[2] Plaintiffs also show specific intent by alleging that Garcia intended for Richard to be arrested and that the detective knew he had no probable cause to believe that Richard was guilty of those crimes. Together, these allegations plead the kind of reckless disregard contemplated by the Bane Act.

Defendants argue that they are immune from liability under Gov't Code § 820.2. But § 820.2 immunity is reserved for basic policy decisions which have been expressly committed to coordinate branches of government. *Barner v. Leeds*, 13 P.3d 704, 709 (Cal. 2000). The burden lies with the state to "make a showing that such a policy decision, consciously balancing risks and advantages, took place." *Greenwood v. City of Los Angeles*, 89 Cal. App. 5th 851, 861 (2023) (citing *Johnson v. State*, 447 P.2d 352, 361 (Cal. 1968)). Defendants fail to meet their burden.

"A decision to submit false testimony to request an arrest warrant is an operational act, rather than a basic policy decision." *Black v. City of Blythe*, No. EDCV211672JGBSPX, 2022 WL 2037124, at *4 (C.D. Cal. May 5, 2022) (citing *McQuirk v. Donnelly*, 189 F.3d 793, 799 (9th Cir. 1999); *McCorkle v. City of Los Angeles*, 449 P.2d 453, 460 (Cal. 1969)). *McQuirk* considered whether § 820.2 immunity applied to a sheriff's defamatory statements during an employment reference call. The Ninth Circuit held that while the decision to provide a reference about past employees may be a policy decision entitled to immunity, the decision about what to include in that reference involves mere implementation of the larger policy. *McQuirk*, 189 F.3d at 799. In the same way, the decision to submit testimony in support of a requested arrest warrant may be a

[2] Defendants rely on *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) (holding that the Bane Act "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself"), but the Ninth Circuit has adopted the contrary analysis set forth in *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017), *as modified* (Nov. 17, 2017), which held that a Bane Act pleading need not show coercion independent from the underlying constitutional violation. The Ninth Circuit noted that *Shoyoye* was also distinguishable because it "involv[ed allegations of] mere negligence" rather than the type of intentional conduct alleged here. *Reese*, 888 F.3d at 1043.

policy decision, but what to include in that testimony is not. This is also common sense: The City's policy cannot possibly have been to submit reports lacking probable cause for the purpose of securing arrest warrants.

Accordingly, the Court denies the City Defendants' motion to dismiss the Bane Act claim. And because plaintiffs have pleaded a valid claim, the Court denies the City Defendants' motion to strike that claim under California's anti-SLAPP law.

**B. Loss of Consortium**

Plaintiffs plead a single count encompassing both a California state law loss of consortium claim and a federal substantive due process claim for loss of familial association.

**1. State Claim**

The Court previously determined that Garcia was immune from defendants' state law claims because they arose from the institution of criminal proceedings rather than purely investigative conduct. *Zilinskas I*, 819 F. Supp. at 1040. Plaintiffs argue that their new state law loss of consortium claim is distinguishable because it is brought by Mildred and arises from "the loss of the care comfort and society of her husband" rather than the institution of criminal proceedings. But any harm to Mildred was still caused by Richard's arrest, which "flowed entirely from the initiation of a criminal proceeding against him." *Zilinskas I*, 819 F. Supp. at 1040. Garcia is therefore immune from that claim under § 821.6. And because Garcia is immune, so is the city. Cal. Gov't Code § 815.2. The Court therefore grants the City Defendants' motion to dismiss plaintiffs' fourth claim.

For the same reasons, the Court grants the City Defendants' motion to strike that claim. Garcia's "pressur[ing]" of Gibson to seek an arrest warrant constituted protected communication made in connection with an official proceeding, satisfying the anti-SLAPP statute's first requirement. *Schaffer v. City & County of San Francisco*, 168 Cal. App. 4th 992 (2008) (concluding that an inspector's memorandum urging a district attorney to charge the plaintiff was protected for the purposes of California's anti-SLAPP statute). And plaintiffs cannot establish a reasonable probability of success on their loss of consortium claim, given its facial invalidity.

**2. Federal Claim**

The Fourteenth Amendment protects individuals from a state's deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause guarantees not only a fair and reasoned process but also certain fundamental rights such as the right to marry, to have children, to use contraception, to bodily integrity, and to maintain certain family relationships. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). While the Ninth Circuit has recognized that the right to familial association protects a parent's interest in the companionship of her child, *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), it "has repeatedly dodged the question of whether a [spouse] may assert a § 1983 claim for unwarranted interference with familial association," *N.M. by & through Miller v. Placer Cnty.*, No. 2:25-CV-1389 WBS JDP, 2025 WL 2443702, at *5 (E.D. Cal. Aug. 25, 2025) *rev'd and remanded sub nom. N. M. v. Guillemin*, No. 25-5890, 2026 WL 2280979 (9th Cir. Aug. 7, 2026); *see also Peck v. Montoya*, 51 F.4th 877, 892–93 (9th Cir. 2022) (declining to address whether a spouse has a right to familial association); *cf. Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (both the First and Fourteenth Amendments protect a parent's interest in the companionship of her child). Other circuits are split on the issue. *Compare Harbury v. Deutch*, 233 F.3d 596, 606 (D.C. Cir. 2000) (*rev'd on other grounds sub nom. Christopher v. Harbury*, 536 U.S. 403, 122 (2002)) (holding that family association claims are limited to a parent's relationship with her child), *with Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) (holding that family association claims may be based on a wife's relationship with her husband). Defendants argue that there is no spousal companionship included in the right to familial association, so Mildred lacks standing to pursue her § 1983 claims.

The Supreme Court has long recognized that a foundational tenet of individual liberty is the "the formation and preservation of certain kinds of highly personal relationships." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The principles that establish a constitutional basis for the relationship of parents to their children can be extended to spousal companionships. *See Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541 (1942) ("Marriage and procreation are fundamental to the very existence and survival of the race."); *Obergefell v. Hodges*, 576 U.S. 644,

666 (2015) ("Like choices concerning contraception, family relationships, procreation, and childrearing, all of which are protected by the Constitution, decisions concerning marriage are among the most intimate that an individual can make.").

Family relationships, including "marriage," "involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *U.S. Jaycees*, 468 U.S. at 619–20. The Supreme Court has repeatedly emphasized the fundamental right to marriage, *see Griswold v. Connecticut*, 381 U.S. 479, 486 (1965) ("[Marriage] is a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred."), and expanded it to include the right to contraception within marriage, *Griswold*, 381 U.S. 479, interracial marriage, *Loving v. Virginia*, 388 U.S. 1 (1967), dissolution of a marriage, *Boddie v. Connecticut*, 401 U.S. 371, 372 (1971), marriage without a court order, *Zablocki v. Redhail*, 434 U.S. 374 (1978), marriage in prison, *Turner v. Safley*, 482 U.S. 78 (1987), and same-sex marriage, *Obergefell*, 576 U.S. 644. It would be counterintuitive to recognize the fundamental importance of marriage while also denying a spouse constitutional protection for the companionship of the other. The Court therefore joins many other courts in this circuit that have found that the right to familial association encompasses spousal relationships. *See, e.g.*, *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273–74 (E.D. Cal. 2012); *DeVillena v. City of Palm Springs*, No. EDCV1300610VAPSPX, 2015 WL 13914772, at *8 (C.D. Cal. Aug. 25, 2015); *Est. of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1160 (S.D. Cal. 2015); *Wilkerson v. Millet*, No. 3:15-CV-01108-PA, 2016 WL 3018700, at *3 (D. Or. May 25, 2016); *Robertson v. Cnty. of Los Angeles*, No. CV1602761BROSKX, 2017 WL 5643179, at *11 (C.D. Cal. Oct. 17, 2017); *Savage v. City of Corona*, No. EDCV 24-97-KK-SPX, 2024 WL 2104595, at *6 (C.D. Cal. Apr. 1, 2024).

Official conduct that "shocks the conscious" in depriving a family member of her protected familial associations violates the Due Process Clause. *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (citing *Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010)). In a scenario

where a defendant had "ample time to correct [his] conduct," "deliberate indifference to the harm they caused may be sufficient to shock the conscience." *Peck*, 51 F.4th at 893. Plaintiffs have alleged that Garcia exhibited deliberate indifference in initiating criminal proceedings against Richard and failed to correct his conduct in the extended period between the initiation of those proceedings and Richard's arrest. *See supra*. Mildred Zilinskas has therefore pleaded the elements of a § 1983 action premised on violations of the Fourteenth Amendment.

The City Defendants also assert that Garcia is entitled to qualified immunity, arguing that the law regarding family association was not clearly established at the time of Garcia's alleged violation. Given that the availability of qualified immunity will depend in part upon the facts regarding Garcia's conduct, the Court declines to consider the qualified immunity defense without a developed factual record. *See Keates*, 883 F.3d at 1234 ("Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.") (citing *Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004)).

**CONCLUSION**

For the foregoing reasons, the Court grants the motion to dismiss the state law loss of consortium claims against all defendants and grants the motion to dismiss the Bane Act claim as to the County Defendants. These dismissals are with prejudice and without further leave to amend. The Court also grants the City Defendants' anti-SLAPP motion to strike the state law loss of consortium claim.[3] The Court otherwise denies the motions to dismiss and anti-SLAPP motion.

**IT IS SO ORDERED.**

Dated: August 31, 2026

P. Casey Pitts
United States District Judge

[3] Although federal courts generally refrain from granting anti-SLAPP motions without first providing the plaintiff with an opportunity to amend, the Court has now held on two occasions that § 821.6 immunity governs any state law claim arising from Richard's arrest. As a result, any further amendment would be futile.